# In the United States Court of Federal Claims

**No. 21-1819C**
**Filed: January 31, 2022**
**Redacted Version Issued for Publication: July 22, 2022[1]**

```
* * * * * * * * * * * * * * * *        *
L3 TECHNOLOGIES, INC.                  *
COMMUNICATION SYSTEMS-WEST,            *
                                       *
              Protestor,               *
                                       *
v.                                     *
                                       *
UNITED STATES,                         *
                                       *
              Defendant,               *
                                       *
                                       *
v.                                     *
                                       *
NORTHROP GRUMMAN SYSTEMS               *
CORPORATION,                           *
                                       *
              Defendant-Intervenor.    *
                                       *
* * * * * * * * * * * * * * * *        *
```

**Craig A. Holman,** Arnold & Porter Kaye Scholer LLP, Washington, DC, for protestor. With him were **Mark D. Colley**, **Kara L. Daniels**, **Michael D. McGill**, **Thomas A. Pettit**, **Trevor G. Schmitt**, and **Aime JH Joo**, Arnold & Porter Kaye Scholer LLP, Washington, DC.

**Steven M. Mager**, Senior Trial Counsel, Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, for defendant. With him were **Douglas K. Mickle J.,** Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brian M. Boynton**, Acting Assistant Attorney General, Civil Division. **Theresa M. Francis** and **Thy Nguyen**, Department of the Navy, of counsel.

**Jason A. Carey**, Covington & Burling LLP, Washington, DC, for intervenor. With him were **Kayleigh M. Scalzo**, **J. Hunter Bennett**, **Andrew R. Guy**, **Peter B. Terenzio III**, and **Paul Rowley**, Covington & Burling LLP, Washington, DC.

---

[1] This Opinion was issued under seal on January 31, 2022. The parties were asked to propose redactions prior to public release of the Opinion. This Opinion is issued with the redactions that the parties proposed in response to the court's request. Words which are redacted are reflected with the notation: "[redacted]." The delay in publication of the redacted Opinion was due to related court proceedings.

**O P I N I O N**

**HORN, J.**

     In the above-captioned bid protest, protestor L3 Technologies, Inc. Communication Systems-West (L3Harris CSW) "challenges the implementation by the Department of the Navy, Naval Air Systems Command of an arbitrary U[nited] S[tates] Government Accountability Office [GAO] decision. The GAO decision, in violation of procurement law and without reasoned basis, sustains, in part, the procedurally and substantively deficient bid protests of Northrop Grumman Systems Corporation-Mission Systems against the lawful Navy awards to L3Harris CSW . . . under Solicitation Nos. N00019-19-R0069 and N00019-19-R0069-A." (internal references omitted). As discussed below, the Navy declined to fully implement the GAO recommendations, specifically declining to re-open discussions, request revised proposals, evaluate proposals consistent with the evaluation criteria, and make a new source selection decision. L3Harris CSW had filed a bid protest in this court prior to the Navy's final decision to proceed with its original awards to L3Harris CSW. Thereafter, defendant and intervenor, Northrop Grumman Systems Corp. (Northrop), filed motions to dismiss L3Harris CSW's protest as lacking standing and as moot.

**FINDINGS OF FACT**

     The procurements at issue in this protest have a lengthy procedural history, only some of which is relevant to the motions to dismiss currently under review in this protest and this Opinion. Therefore, only the following limited facts are included below.

     By way of background, the GAO explained:

> On November 17, 2017, the Navy issued a broad agency announcement (BAA) No. N0019-18-R-0008 for the award of demonstration of existing technologies (DET) contracts to gather information for development . . . . In October 2018, the agency awarded two DET contracts, one to Northrop and a second to L3 Technologies, Inc. . . . The data gathered from both DET contracts aided the Navy in drafting specifications for the NGJ-LB CB-1 procurement at issue in this case. While the contractors were performing the DET contracts, the Navy began drafting the CB-1 specifications. To that end, on May 15, 2019, the Navy released a request for information (RFI) to industry, describing the NGJ-LB program and draft requirements. The RFI was part of the Navy's market research to evaluate the feasibility of conducting an unrestricted procurement, as well as its continued pursuit of data for the development of the CB-1 specifications.

Northrop Grumman Sys. Corp.--Mission Sys., B-419560.3, 2021 WL 4054164, at *1 (Comp. Gen. Aug. 18, 2021) (footnotes and internal references omitted).

On September 9, 2019, the Navy issued Solicitation No. N00019-19-R0069 (CB-1 RFP),[2] for the design, development, and manufacture of prototypes for the Navy. As noted by the GAO, "[t]he resulting contract will require the successful firm to 'design, develop, build, integrate, test, and maintain' operational prototypes" for the Navy. Id.

The CB-1 RFP contemplated "the award of a single cost-plus-incentive-fee contract to the offeror that provides the best value to the government considering two factors: technical and cost." id., and with the Technical factor being significantly more important than the Cost factor. The winning proposal, according to the CB-1 RFP, "must demonstrate to the Government's satisfaction that the Offeror will provide a program that will ensure the successful accomplishment of the solicitation requirements and overall program objectives."

The Technical factor consisted of eleven elements that "are not individually weighted and will be evaluated as a whole." The CB-1 RFP described the Technical Rating as "an assessment of compliance with the solicitation requirements and merit which considers the benefits and detriments related to program performance and operations."

The CB-1 RFP also provided that the "[f]ailure to address part or parts of the technical factor caused by a lack of information may be assessed as a weakness, significant weakness or multiple significant weaknesses," and a "combination of significant weaknesses that increase the risk of unsuccessful contract performance to an unacceptable level may be considered a deficiency." "The Cost factor included a determination of total evaluated cost, which would be calculated by adding together various cost plus incentive fee and firm fixed price CLINs, plus the total evaluated cost from the RFP addendum."

Two offerors, the protestor L3Harris CSW and the intervenor Northrop, submitted proposals in response to the CB-1 RFP and the Addendum RFP, and on February 25, 2020, the Navy established a competitive range that included both L3Harris CSW and Northrop. As indicated in the protestor's complaint: "Between February 2020 and October 2020, the Agency conducted ten rounds of discussions with L3Harris CSW and Northrop, issuing a total of 971 evaluation notices ('ENs') 'with an additional 350 ENs issued for the' Addendum RFP and requesting multiple revised proposals. The Agency closed discussions on October 29, 2020." Subsequently on November 5, 2020, L3Harris CSW and Northrop submitted their final proposal revisions.

_____

[2] The parties, as well as the GAO, refer to Solicitation No. N00019-19-R0069 as "CB-1 RFP." Similarly, the parties and the GAO refer to Solicitation No. N00019-19-R0069-A as the "Addendum RFP." The court adopts the same terminology in this Opinion, and refers to Solicitation No. N00019-19-R0069 as the CB-1 RFP, and Solicitation No. N00019-19-R0069-A as the Addendum RFP. The GAO noted that the Navy issued the Addendum RFP as a separate solicitation; "however, the RFP provided that the Navy would award contracts for the CB-1 RFP and the Addendum RFP to one offeror." Northrop Grumman Sys. Corp.--Mission Sys., 2021 WL 4054164, at *1.

In the January 21, 2021 debriefing the Navy provided the following chart comparing the L3Harris CSW and Northrop proposals:

| Factor | | L3Haris CSW | Northrop |
|---|---|---|---|
| Technical | Rating | Outstanding | Unacceptable |
| | Risk | Moderate | Unacceptable |
| Price | | $544.4 Million | $496.0 Million |
| Terms and Conditions | | No issues | No issues |
| Awardability | | Awardable | Not Awardable |

As indicated in L3Harris CSW's bid protest complaint:

L3Harris CSW earned [redacted] strengths under the Technical Factor—with "at least one strength in each element that could award a strength"—demonstrating "its exceptional approach" and resulting in an Outstanding Technical Compliance rating. . . . "The Government's analysis of [L3Harris CSW]'s design concluded that [redacted] are projected to meet requirements." L3Harris CSW's Moderate Risk rating resulted from "the compilation of [redacted] significant weaknesses and [redacted] risk reducers." L3Harris CSW's risk reduction efforts gave the SSAC confidence that L3Harris CSW will "overcome these risks with special contractor emphasis and close Government monitoring."

(internal references omitted).

By contrast, as indicated in L3Harris CSW's bid protest complaint:

The Agency assigned Northrop Unacceptable Technical and Risk ratings based on the compilation of seven significant weaknesses . . . and a deficiency for Addendum RFP Section 2.4.7. The SSAC noted "six risk reducers" for Northrop "that do not mitigate any of the significant weaknesses or deficiency." The Unacceptable ratings rendered Northrop's proposal ineligible for award.

(internal references omitted).

On December 15, 2020, the Source Selection Authority concluded: "Any capability that has the potential to significantly increase the Navy's air superiority, while reducing mission load is well within the moderate risk associated with this design and development program. Therefore, I believe L3H's NGJ-LB proposal does represent the best value to

the Government." L3Harris CSW, therefore, was awarded both contracts pursuant to the CB-1 RFP and the Addendum RFP on December 18, 2020.

As noted in L3Harris CSW's complaint, Northrop subsequently "filed eight protests and supplemental protests, including conflict of interest allegations (against the former acting Secretary of the Navy, a retired admiral, and a Navy electronics engineer) and technical evaluation challenges." Relevant to the current bid protest in this court are two decisions issued by the GAO on August 18, 2021,[3] the first of which alleged a conflict of interest involving [redacted], a former Navy official who was involved in both the DET contracts and the NGJ-LB procurement during his time at the Navy, and who presently works for L3Harris CSW. In the United States Court of Federal Claims Northrop has alleged "[redacted] began pursuing employment with L3Harris in August 2019, during performance of the DET contracts and approximately one month before the Navy issued the CB-1 RFP," "[redacted] accepted the job offer from L3Harris on October 1, 2019," and "[d]uring the time in which he was pursuing — and after he accepted — employment with L3Harris, [redacted] worked on the CB-1 RFP and DET contracts on a 'full time' and uninterrupted basis. He served as the Navy's foremost technical expert" on the subject matter of the contracts at issue in the above captioned protest.

On May 10, 2021, Northrop filed a protest with GAO "alleging that [redacted] failure to recuse from his work on the CB-1 RFP and DET contracts while he pursued — and after he accepted — employment with L3Harris created a conflict of interest and appearance of impropriety under FAR 3.101-1." In the GAO decision, the GAO indicated:

The record shows, and the agency does not dispute, that during the period of August through early October of 2019, X[4] was negotiating for employment with L3Harris while actively participating in the development of the CB-1 specifications, and working closely with Northrop and L3Harris on the performance of their DET contracts. X engaged in this conduct without qualification or reservation notwithstanding the prohibition of FAR section 3.104-2(b), and the related applicable government ethics rules identified under this FAR provision, which provide that a person should be disqualified from participating substantially in an acquisition while negotiating for employment with an offeror such as L3Harris. In defense of the award, the agency essentially argues that X's actions had no impact on the competition. According to the agency any perceived conflict associated with X's employment negotiations did not taint the competition because his work on the DET contract and the CB-1 specifications was limited and had no

---

[3] As explained in protestor's bid protest complaint, also on August 18, 2021, the GAO "dismissed and denied" Northrop's B-419557.2 and B-419557.3 protests relating to the Addendum RFP, "upholding the Navy's decision that Northrop was technically unacceptable and thus ineligible for award under either contract based on Northrop's failure to propose an approach that could meet the Addendum RFP requirements."

[4] In the publicly available GAO decision, the GAO uses "X" to refer to [redacted].

discernable impact on the evaluation of Northrop's and L3Harris's proposals. Based on our review of the record, we conclude that X's actions created the appearance of an unfair competitive advantage in favor of L3Harris and that the agency's consideration of the conflict was unreasonable. As detailed below, the record reflects X's extensive participation in developing the requirements for the CB-1 RFP at the same time he engaged in employment negotiations with L3Harris, a known potential competitor for the CB-1 procurement, and ultimate awardee. We reject the agency's conclusion that any apparent conflict did not have an impact on the competition because the conclusion was without a reasonable basis. We therefore sustain the protest.

Northrop Grumman Sys. Corp.--Mission Sys., 2021 WL 4054164, at *6 (footnotes and internal citations omitted). The GAO decision indicated that

The record reflects that the Navy employed X as an electronics engineer from 2013 to November 1, 2019. Between December 2017 and October 2019, X, based on his subject matter expertise, worked as a team leader within the NGJ-LB program, specifically, the [DELETED] Lead. In this role, X participated on the government/contractor technical teams for both Northrop and L3Harris during the execution of their respective contracts; he was familiar with both Northrop's and L3Harris's DET designs, and attended working group and design status meetings with both contractors. As noted above, the Navy used information gathered during the execution of the DET contracts to ascertain the maturity of the technology for the NGJ-LB program and to aide in drafting the CB-1 specifications. X also was part of the Navy team that developed the CB-1 specifications and provided input for the CB-1 evaluation criteria. In this capacity, even though X was not authorized to approve CB-1 requirements unilaterally, he made recommendations to the Chief Engineer. In 2019, an L3Harris employee contacted X about a resume he had previously submitted to Harris's space unit several years earlier. On September 9, 2019, the Navy issued the CB-1 solicitation. On September 13, X applied for the Lead, [DELETED] Systems Engineer with L3Harris SAS and was offered a position on September 25. X met with Navy ethics counsel on September 30, at which point he was advised that he did not need a post-government employment ethics opinion and that he could accept employment with L3Harris SAS. Although ethics counsel informed X about his obligation to the Navy and with respect to confidential contractor information, the record does not reflect that ethics counsel discussed X's activities during the period of his employment negotiations. Thereafter, X accepted L3Harris SAS's offer and notified Northrop and L3Harris during individual team meetings held on October 1 and 2 that he would be leaving the Navy to work for L3Harris SAS. X performed his duties on the DET contracts and the CB-1 RFP until his employment with the Navy ended on November 1. While X's last day physically in his office was October 18--he was on leave from October 19

through October 31--X continued to work on the CB-1 RFP specifications by answering email from a colleague and providing his input for the agency's response to an offeror's question.

Id. at *7 (footnote and internal citations omitted; redactions in original). The GAO also noted that

[w]ith regard to the DET contracts, X was part of the technical team for both Northrop and L3Harris during the execution of each of their individual contracts and the record reflects that between August 1 through October 2, X participated in contract data requirements list (CDRL) reviews, DET program management reviews/technical interchange meetings (PMR/TIM) with Northrop and L3Harris.

Id. at *8 (footnote and internal citations omitted). The GAO referenced that the Navy conducted an investigation of [redacted] and noted that

[t]he contracting officer's investigation also examined X's participation in the CB-1 procurement from August 1 through November 13. The contracting officer found that X participated in the procurement in four different ways: (1) drafting government responses to industry questions on the draft and final CB-1 RFP; (2) developing section L, instructions to offerors; (3) developing the SOW and CDRL; and (4) developing SPS requirements. For example, the record establishes that X participated in providing agency responses to industry questions on the draft and final solicitation that included updated technical details that remained in the final solicitation. X also recommended changes to section L.2.1.3 of the RFP, under instructions to offerors . . . These recommended changes were incorporated in the final RFP and the Navy evaluated Northrop and L3Harris on their compliance with these requirements. The investigation also showed that X recommended changes to the SOW/CDRL, as well as made substantive changes to several SPS requirements. As the record makes clear, X's recommendations were approved and included in the final RFP. X recommended substantive changes to several specifications that were reflected in the final RFP. In particular, X added significant detail to the draft cSPS-1128 specification . . . dictated the required level of performance. The draft SPS requirements did not fully define the cSPS-1128 specification and the requirement was not measurable. X recommended edits on August 16, 2019, that defined the cSPS-1128 requirement; X updated the specification text and a new table was added using numbers derived from X and his team's analysis that defined performance metrics for [DELETED].

Id. at *8-*9 (internal citations omitted; redactions in original). The GAO explained that

regarding X's involvement with the CB-1 specifications, the agency points to the fact that its investigation found that X had no authority to approve

changes to the requirements and that all changes were approved at least two levels above him. The agency also highlights aspects of the agency's investigation, which found that X's work in developing the CB-1 requirements had no impact on the ultimate evaluation, or that such an impact may have actually benefited Northrop. For example, the contracting officer found that X's recommendations had minimal impact on the CB-1 procurement because neither offeror took exception to the SOW/CDRL changes. The contracting officer also concluded X's contributions were minimal because the SPS requirement changes were unrelated to technical findings in the agency's evaluation, concluding, without explanation, that X's updated cSPS-1128 specification would affect all proposals. Additionally, the contracting officer noted that Northrop received no technical findings from the agency's evaluation related to the cSPS-1128 requirement, whereas L3Harris received a significant weakness for this requirement. Regarding the DET contracts, the Navy found that X's participation in PMR/TIM meetings and the comments he made during the meetings did not provide direction to change the contractors' designs and did not have a significant impact on the CB-1 evaluation.

Id. at *9-*10 (internal citations omitted).

The GAO decision reiterated that "[t]he facts are clear and there is no dispute that X participated in the development of CB-1 specifications and the execution of the DET contracts, while engaged in employment negotiations with L3Harris. Accordingly, the record is consistent with the circumstances attendant to a 'biased ground rules' conflict of interest." Id. at *9. With respect to the Navy's arguments regarding its investigation, GAO reasoned

the agency's conclusion about its investigation reflects a circular logic. According to the Navy, because there is no evidence in the evaluation record to demonstrate that Northrop's proposal received adverse technical findings for requirements that X worked on while negotiating employment with L3Harris, or that L3Harris received favorable ratings, there was no harm. The failure to find such proof in the evaluation findings, however, does not suggest the lack of a conflict, or the lack of bias in the specifications because, as explained above, the potential harm from such a conflict is by its nature, not susceptible to such proof. See Teledyne Brown Eng'g, Inc., supra [B-418835, 2020 WL 5760360 (Comp. Gen. Sept. 28, 2020)]; Department of the Navy--Recon., supra [B-286194.7, 2002 WL 1120729 (Comp. Gen. May 29, 2002)].The hard facts that are required are those which establish the existence of the organizational conflict of interest, not the specific impact of that conflict. See HBI-GF, JV, B-415036, Nov. 13, 2017, 2017 CPD ¶ 331 at 7; Satellite Tracking of People, LLC, B-411845, B-411845.2 Nov. 6, 2015, 2015 CPD ¶ 347 at 8 (where the contracting officer identified a conflict of interest, but undertook no actions to safeguard the procurement process, GAO "need not resolve the question of whether

8

the program manager's participation in the acquisition favored, disfavored, or had no impact" on the protester. "To maintain the integrity of the procurement process, we will presume that the protester was prejudiced, unless the record includes clear evidence establishing the absence of prejudice."). Because the circumstances of X's apparent conflict concerned the integrity of the ground rules of the competition, the agency should have instead focused its inquiry on the integrity of the specifications and their potential for bias; rather than the resulting evaluation. For example, we have found that allegedly biased specifications can be mitigated by subsequent activities by unbiased individuals. See e.g., BAE Sys. Tech., B-411810.3, June 24, 2016, 2016 CPD ¶ 174 at 13-15 (contracting officer reasonably concluded that significant changes to solicitation requirements reasonably mitigated potential biased ground rules conflict). Having failed to do so, we cannot find that the agency has presented clear evidence to establish the absence of prejudice.

Northrop Grumman Sys. Corp.--Mission Sys., 2021 WL 4054164, at *11.

Therefore, the GAO concluded: "For the above reasons, the appearance of impropriety resulting from the biased ground rules conflict of interest at issue here tainted the integrity of the procurement, and we therefore sustain the protest." Id. In its recommendations section, GAO recommended:

In this protest we sustain the allegation that an apparent conflict of interest was created when X, who was engaged in employment negotiations with L3Harris also developed specifications for the CB-1 solicitation. The ordinary remedy where a conflict cannot be mitigated is the elimination of that competitor from the competition. See The Jones/Hill Joint Venture, supra at 22 n.26. Here, we are mindful that it is neither feasible nor desirable to eliminate L3Harris from the competition and it may be possible to mitigate the conflict by engaging individuals without a conflict to review the specifications tainted by X's conflict of interest. We therefore recommend that the Navy engage individuals with the requisite technical expertise to conduct an independent review of X's input during the relevant period of conflict on the CB-1 specifications to determine whether X's input was consistent with the Navy's actual requirements.

If the agency concludes that the specifications continue to reflect its needs, we recommend that the agency reopen discussions and request revised proposals, evaluate proposals consistent with the evaluation criteria, and make a new source selection decision. Alternatively, if the agency decides that its specifications have changed, we recommend that the agency issue an amendment reflecting its updated requirements, request revised proposals, and make a new source selection decision.

We also recommend that Northrop be reimbursed its reasonable costs of filing and pursuing its protest, including attorneys' fees. 4 C.F.R. § 21.8(d)(1). The protester's certified claim for costs, detailing the time expended and costs incurred, must be submitted directly to the agency within 60 days after receipt of this decision.

Northrop Grumman Sys. Corp.--Mission Sys., 2021 WL 4054164, at *11-*12.

Also on August 18, 2021, the GAO issued a second related decision. See generally Northrop Grumman Sys. Corp.-Mission Sys., B-419560.6, 2021 WL 4902511 (Comp. Gen. Aug. 18, 2021). Northrop protested the award L3Harris CSW and alleged that "the agency misevaluated the awardee's proposal when it rated the proposal as acceptable despite the fact that the proposal did not demonstrate compliance with a material solicitation requirement." Id. at *1. In this second GAO decision, the GAO indicated that "Northrop alleges that L3Harris did not propose an approach to meet the cSPS–1128 specification," and

that the Navy should have assessed L3Harris's proposal a deficiency for failing to meet this threshold requirement instead of a significant weakness. In challenging the agency evaluation, Northrop disputes the agency's contention that L3Harris merely had to propose 'a path to meeting' the threshold requirement, and argues, in any event, that L3Harris offered no path. According to Northrop, L3Harris's proposal was technically unacceptable and ineligible for award.

Id. at *4. The GAO noted that

[t]he agency makes several arguments in response to Northrop. Essentially, the Navy contends that the RFP did not require L3Harris to demonstrate a design approach that met the specification because the solicitation did not require offerors to submit a complete design before contract award. Thus, proposing to improve its approach during the performance of the contract did not reflect a failure of L3Harris to meet solicitation requirements. The agency maintains that it properly assessed the level of risk associated with L3Harris's proposed design approach to meet requirements as "significant" and found that L3Harris proposed a "credible" path to meet the requirements. In this regard, the Navy contends that it consistently assessed a significant risk when either Northrop or L3Harris proposed a credible path to meet the requirement or proposed a design that improved upon the design that generated most of the substantiating data.

Id. at *5 (internal references omitted). Despite the explanations offered by the Navy, the GAO concluded:

Notwithstanding the agency's arguments to the contrary, we agree with the protester that the agency's evaluation of L3Harris's proposal was not

consistent with the terms of the solicitation. While the solicitation did not require complete pod designs at the time of proposal submission, the solicitation did identify certain "threshold" requirements, to include the . . . specification. For these threshold requirements, offerors were to "describe how [their] design approach meets" the . . . requirements. By use of the present tense "meets," the plain language of the solicitation required offerors to demonstrate in their proposals that their design approach "meets" the threshold requirements. Despite the clear language of the solicitation, requiring offerors to describe how their design approach "meets" the cSPS–1128 threshold requirements, the record shows that the agency's evaluators considered L3Harris's proposed design approach as acceptable, albeit with significant risk, notwithstanding the fact that L3Harris's proposal did not describe an approach that actually "meets" these requirements.

Specifically, the agency found that L3Harris's proposed approach "has not been fully substantiated to enable full compliance with [DELETED] requirement, (cSPS–1128) resulting in potential technical and schedule risk." The agency also specifically observed that L3Harris's proposed [DELETED] "does not meet requirements at some [DELETED] frequencies" and that L3Harris planned to [DELETED] for the [DELETED] frequencies where the requirement could not be met. The agency noted that while L3Harris's proposed [DELETED] showed "up to [DELETED] improvement; . . . . however, [L3Harris] does not directly compare the proposed improved performance to requirements."

Despite the fact that L3Harris's proposed design approach did not meet the stated requirements, the agency noted that L3Harris intends to continue to improve the [DELETED] during the performance of the CB–1 contract and found that L3Harris's proposed approach to use the [DELETED] "provides a credible path to meeting [DELETED] requirements" even though the proposed design is not fully substantiated. The agency concluded that this limited substantiation increased the risk of meeting . . . compliance. The agency also concluded that this risk, combined with another risk not relevant to this discussion, warranted a significant weakness for L3Harris's overall . . . approach.

There is no dispute that the Navy's own evaluators found that L3Harris's proposal did not demonstrate an approach that met the threshold requirements for the cSPS–1128 specification. L3Harris's proposal includes a table identifying 16 frequencies that do not achieve the [DELETED] threshold requirements and even with L3Harris's anticipated modifications identified in its proposal, L3Harris's approach will not meet the requirement for 12 frequencies. Accordingly, we agree with the protester that L3Harris's proposal did not comply with the cSPS–1128 requirements. To the contrary, L3Harris's proposal clearly reflected a design approach that did not meet

these requirements. Accordingly, the agency erred by failing to assign L 3Harris's proposal a deficiency for this failure. Throughout its defense, the agency insists that it properly focused on the risk related to L3Harris's limited substantiation for its [DELETED] because L3Harris proposed a credible path forward to meet the requirement. The agency's argument, however, reflects a misunderstanding of the fundamental problem with the evaluation. The error in the agency's evaluation is not whether, or the degree to which, L3Harris substantiated its design approach. Rather, the error is the agency's failure to properly assess L3Harris's failure to comply with the requirement to provide a design approach that "meets" the cSPS– 1128 specification threshold requirements. In other words, per the terms of the solicitation, L3Harris was required to demonstrate a compliant approach in its proposal, not after award. While the agency could reasonably consider the risks associated with the viability of a proposed approach, the approach had to some degree demonstrate that it met requirements in the first instance. The agency's consideration of risks of L3Harris's substantiation of an approach that did not, as a threshold matter, demonstrate the ability to meet the requirement as proposed, is therefore beside the point.

As explained above, L3Harris's proposal clearly showed how its approach fell short of many of the threshold requirements set forth under the cSPS– 1128 specification. L3Harris clearly identified each of the non-compliant frequencies, which it referred to as "less than ideal." L3Harris's alleged "path forward" was little more than the firm's cautiously optimistic statements about a potential ability to comply, although hedging that "improvements . . . do not directly translate to an increase in compliance" and that positive impacts on BAPs were "as of yet, unquantified." L3Harris's proposal was therefore technically unacceptable. Based on this record, the agency unreasonably evaluated L3Harris's proposal as technically acceptable and we sustain the protest.

Id. at *5-*6 (footnote and internal citations omitted). In its recommendations section, the GAO recommended:

In this protest, we sustain the allegation that the Navy unreasonably evaluated L3Harris's proposal as technically acceptable when L3Harris's proposed approach did not meet the solicitation's material requirements. We therefore recommend that the Navy reopen discussions and request revised proposals; evaluate proposals consistent with the evaluation criteria; and make a new source selection decision. Alternatively, if in conjunction with our recommended corrective action in Northrop Grumman Systems Corporation-Mission Systems, B–419560.3 et al., supra, the agency concludes that its specifications should be revised, we recommend that the agency issue an amendment to the solicitation reflecting updated specifications, request revised proposals, and make a new source selection decision. We also recommend that Northrop be reimbursed its reasonable

costs of filing and pursuing its protest, including reasonable attorneys' fees. 4 C.F.R. § 21.8(d)(1). The protester's certified claim for costs, detailing the time expended and costs incurred, must be submitted directly to the agency within 60 days after receipt of this decision.

Northrop Grumman Sys. Corp.-Mission Sys., 2021 WL 4902511, at *7 (footnote omitted).

On September 7, 2021, protestor L3Harris CSW filed this bid protest complaint in this court. The complaint lists three counts. Count 1 is titled: "The implementation of the GAO decision lacks reason and contravenes the law given that Northrop lacked standing to protest the L3Harris CSW awards," and regarding Count 1, protestor argues "[d]uring the protest process, the Contracting Officer affirmed that L3Harris offered the only viable solution and Northrop's solution remained deficient" and that "Northrop did not contest any of the findings underlying its assessed deficiency and GAO denied Northrop's Addendum RFP protest in any event." Protestor claims that "GAO did not address (much less resolve) the standing motions before it," and therefore "GAO's decision is arbitrary, capricious, and contrary to law and any action to implement GAO's recommendation also necessarily lacks a rational basis." Count 2 is titled: "GAO's Decision regarding [redacted] in Northrop Grumman Sys. Corp.-Mission Sys., B-419560.3, B-419560.4, B-419560.5, and B-419560.7 is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law rendering implementation of the GAO [redacted] recommendation flawed." Protestor argues, regarding Count 2, "GAO lacked jurisdiction to review Northrop's PIA [Procurement Integrity Act] claims," and "GAO arbitrarily failed to address that Northrop had waived its protest under established procurement law." Protestor also argues that "GAO's decision ignored the material fact that Legacy Harris (including the entity that hired [Mr. X]) supports Northrop," as well as "GAO in violation of procurement law and without explanation took the 'Most Unusual' step of disregarding the contemporaneous guidance provided by Navy Ethics Officials," and "GAO violated well established law by not deferring to the contracting officer's reasonable conflict of interest investigation and conclusions." (capitalization in original). For Count 3, titled: "GAO irrationally sustained Northrop Grumman Sys. Corp.-Mission Sys., B-419560.6, rendering the Navy's implementation decision improper," protestor claims that "[t]he GAO failed to address the untimeliness of Northrop's" arguments. Protestor also argues "GAO improperly substituted its judgment for the reasoned, highly-technical conclusions of the agency experts." (capitalization in original).

Protestor's complaint alleges that

L3Harris CSW has standing to file this action because the Agency's decision to implement GAO's irrational and unlawful recommendation affects L3Harris CSW's direct economic interests in several significant ways, including by: (1) effectively nullifying the Navy's prior proper contract award to L3Harris CSW and requiring L3Harris CSW to compete a second time and win the same contract twice, see CBY Design Builders v. United States, 105 Fed. Cl. 303, 337-38 (2012); Sheridan Corp. v. United States, 95 Fed. Cl. 141, 149-50 (2010); (2) unnecessarily forcing L3Harris CSW to

expend the time, effort, and expense of recompeting for a contract it has already lawfully won, see Sys. Application & Techs., Inc. v. United States, 100 Fed. Cl. 687, 710 (2011), aff'd 691 F.3d 1374 (Fed. Cir. 2012); Jacobs Tech. v. United States, 100 Fed. Cl. 173, 177 (2011); (3) delaying L3Harris CSW's performance and income under the awarded contract, Sys. Application, 100 Fed. Cl. at 710; and (4) requiring L3Harris CSW to compete against itself as the Agency released L3Harris CSW competition-sensitive information to the unsuccessful offerors during debriefings. Id.; Sheridan Corp., 95 Fed. Cl. at 150.

L3Harris CSW's bid protest complaint requested that the court declare "GAO's flawed rulings and recommendations and the Agency's implementation of GAO's flawed rulings and recommendations irrational and contrary to law;" declare "the Navy's reasoned, lawful contract awards to L3Harris CSW under the CB-1 RFP and Addendum RFP valid and not subject to re-competition based on Northrop's untimely and meritless GAO protests or GAO's flawed rulings and recommendations;" and declare "that the Navy may proceed with the performance of the lawful contract awards to L3Harris CSW under the CB-1 RFP and Addendum RFP." L3Harris CSW also seeks to enjoin the Navy from implementing the GAO's decisions and terminating L3Harris CSW's contract.

After L3Harris CSW filed its bid protest complaint, on October 18, 2021, Vice Admiral Carl P. Chebi, Commander, Naval Air Systems Command, sent GAO a letter which stated:

> Pursuant to 31 U.S.C. § 3554(b)(3), the Naval Air Systems Command (NA VAIR or Agency) notifies the Government Accountability Office (GAO) that the Agency will not fully implement GAO's recommendations provided in references (a) and (b). In accordance with 31 U.S.C. § 3554(b)(3), if an agency does not fully implement the GAO recommendation within 60 days after receiving the GAO decision, the head of the procuring activity must notify the GAO not later than 5 days after the end of the 60-day period. GAO issued references (a) and (b) on 18 August 2021, which allows the Agency until 22 October 2021 to notify the GAO of its decision whether to implement GAO's recommendation. This notice is timely and in compliance with the Agency's statutory obligations.

> In references (a) and (b), the GAO sustained the protests of Northrop Grumman Systems Corp. (NGC), finding the Agency failed to reasonably consider the potential impact of a conflict of interest created by employment negotiations between L3 Harris Space and Airborne Systems and a former government employee (X), and that the Agency unreasonably evaluated L3 Harris Communication Systems West's (CSW) proposal as technically acceptable. The GAO recommended the Agency (1) engage non-conflicted individuals with the requisite technical experience to review the specifications tainted by X's conflict of interest to determine whether X's input was consistent with the Navy's actual requirements; (2) re-open

discussions, request revised proposals, evaluate proposals consistent with the evaluation criteria, and make a new source selection decision; and (3) reimburse NGC its reasonable costs of filing and pursuing its protest, including reasonable attorney fees.

The Agency has implemented GAO's first recommendation. In response to that recommendation, the Agency conducted a broad search across the Department of Defense to determine a pool of individuals with the requisite technical experience who are not associated with the NGJ-LB program and who could review the Agency's requirement documents. The Agency further limited this pool to three qualified individuals and created an Independent Review Team (IRT) to carry out the GAO's recommended review. To ensure that the IRT members were objective, the IRT includes one member from the Office of Naval Research, one member from an Air Force Research Laboratory, and one member from the Naval Air Warfare Center, Weapons Division, none of whom were previously involved with the NGJ-LB program or report to the Program Executive Office for Tactical Aircraft Programs, the Source Selection Authority. The IRT assessed whether the input X provided on various specifications was consistent with the Agency's requirement. After careful review, the IRT determined the specifications with X's input were and remain consistent with the Agency's requirement.

The Agency will not implement GAO's second recommendation. During the course of the protests, the Agency explained the solicitation requirements and evaluation criteria, particularly that the solicitation provided the technical experts with discretion whether or not to assess a deficiency in the context of this development effort. The Agency believes the second recommendation does not adequately account for the developmental nature of the Agency's requirement as it relates to the evaluation criteria and the Agency's evaluation, and that GAO misinterpreted the solicitation requirements in this regard. It is therefore unnecessary for the Agency to reopen discussions and reevaluate revised proposals in order to make a proper source selection decision. Thus, the Agency respectfully disagrees with, and will not implement, the GAO's second recommendation.

In response to the GAO's third recommendation, the Agency will negotiate with NGC for reimbursement of its reasonable costs of filing and pursuing its GAO protest. Absent further litigation by the parties, the Agency will lift the stop work order for contract No. N00019-21-0021 on 28 October 2021.

After the October 18, 2021 letter, the court instructed the parties to file a joint status report as to how to proceed in the above captioned protest, and on October 25, 2021, the court held a hearing to address the October 18, 2021 letter and the parties' joint status report. As indicated the October 25, 2021 hearing, and after discussions with the parties, the court set a schedule for defendant and the intervenor to file motions to dismiss, if

defendant and the intervenor believed this court lacked jurisdiction over the protestor's complaint.

In defendant's motion to dismiss L3Harris CSW's bid protest complaint, defendant argues that "L3Harris CSW's challenge has been rendered moot," L3Harris CSW does not have standing and "[t]his Court does not possess jurisdiction to entertain L3Harris CSW's challenge to the agency's affirmance of its award to L3Harris CSW after corrective action." Intervenor argues that "L3Harris has no cognizable harm and no standing. Moreover, the concerns raised in L3Harris's complaint have been mooted by the Navy's decision to continue with its awards to L3Harris, and any concerns L3Harris may seek to raise now about hypothetical future action by the Navy are unripe. L3Harris's protest should therefore be dismissed for lack of jurisdiction." In response, protestor argues that its bid protest complaint "asserts the necessary injury for standing," and "L3Harris CSW's protest is not moot." Furthermore, L3Harris CSW claims that "[t]he issues and controversy between the parties remain live." The defendant and intervenor each filed reply briefs, reiterating that this court does not have jurisdiction to continue to consider protestor's claims. The motions are fully briefed.

After the October 25, 2021 hearing, but before the motions to dismiss were filed in the above captioned protest, Northrop filed a separate bid protest,[5] to protest the Navy's decision to continue with its award to L3Harris CSW. See Northrop Grumman Sys. Corp. – Mission Sys. v. United States, Case No. 21-2099C. Northrop argued in its separately filed protest: "The Navy made award to L3 Technologies, Inc. Communication Systems-West even though the company was ineligible for two independent reasons. The U.S. Government Accountability Office reviewed the procurement and, in two detailed decisions, explained the Navy's errors and recommended that the Navy fix them. The Navy, however, refuses to do so, and intends to proceed with the illegal award to L3Harris." (internal references omitted). In its bid protest complaint in Case No. 21-2099C, Northrop requested that the court "[p]ermanently enjoin the Navy from proceeding with the illegal contracts awarded to L3Harris," "[d]eclare L3Harris ineligible by reason of its failure to comply with a material term of the solicitation," "[d]eclare L3Harris ineligible by reason of the conflict of interest created by [Mr.x]'s failure to recuse," and "[d]eclare that the Navy's failure to fully implement the corrective action recommended by GAO was irrational, inadequately documented, and contrary to law."

## DISCUSSION

In considering defendant's and intervenor's motions to dismiss L3Harris CSW's bid protest for lack of jurisdiction, the court notes that "[i]t is well established that '"subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect

---

[5] Northrop's bid protest, Northrop Grumman Systems Corporation – Mission Systems v. United States, Case No. 21-2099C, was assigned to the undersigned.

not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Hymas v. United States, 810 F.3d 1312, 1317 (Fed. Cir. 2016) (explaining that a federal court must satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

This court has jurisdiction to hear bid protests pursuant to 28 U.S.C. § 1491(b)(1) (2018) of the Tucker Act, which provides that this court has

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1); see also Harmonia Holdings Grp., LLC v. United States, 999 F.3d 1397, 1403 (Fed. Cir. 2021); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). The Administrative Dispute Resolution Act of 1996, codified at 28 U.S.C. § 1491(b)(1)–(4), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330–32 (Fed. Cir. 2001).

The Tucker Act grants the United States Court of Federal Claims "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(a)(1). In order to have standing to sue as an "interested party" under this provision, a disappointed bidder must show that it suffered competitive injury or was "prejudiced" by the alleged error in the procurement process. See Todd Constr., L.P. v. United States, 656 F.3d 1306, 1315 (Fed. Cir. 2011) (To prevail, a bid protester must first "'show that it was prejudiced by a significant error' (i.e., 'that but for the error, it would have had a substantial chance of securing the contract).'" (quoting Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378, 1380 (Fed. Cir. 2009)); see also Eskridge & Assocs. v. United States, 955 F.3d 1339, 1345 (Fed. Cir. 2020) ("In a post-award bid protest, the relevant inquiry is whether the bidder had a 'substantial chance' of winning the award—specifically, whether a protestor 'establish[ed] not only some significant error in the procurement process, but also that there was a substantial chance it would have received the contract award but for that error.'" (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996))) (alteration in original); Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1317; Blue Origin Fed'n, LLC v. United States, 157 Fed. Cl. 74, 89 (2021); Aero Spray, Inc. v. United States, 156 Fed. Cl. 548, 562 (2021); AECOM Mgmt. Servs., Inc. v. United States, 147 Fed. Cl. 285, 290 (2020). In order to establish what one Judge on this court has called "allegational prejudice" for the purposes of standing, the bidder must show that there was a "substantial chance" it would have received the contract award, but for the alleged procurement error. See Hyperion, Inc. v. United States, 115 Fed. Cl. 541, 550 (2014) ("The government acknowledges that proving prejudice for purposes of standing merely requires "allegational prejudice," as contrasted to prejudice on the merits . . . ."); Bannum, Inc. v. United States, 115 Fed. Cl. 148, 153 (2014); see also Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir.), reh'g denied (Fed. Cir. 2004); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); Statistica, Inc. v. Christopher, 102 F.3d at 1581; Archura LLC v. United States, 112 Fed. Cl. 487, 497 (2013); Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 557 (2012). Because standing is a jurisdictional issue, this showing of prejudice is a threshold issue. See Corus Grp. PLC. v. Int'l Trade Comm'n, 352 F.3d 1351, 1357 (Fed. Cir. 2003); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002).

In a post-award bid protest, such as the above-captioned bid protest, the "protestor must 'establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest.'" Mgmt. & Training Corp. v. United States, 137 Fed. Cl. 780, 783-84 (2018) (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)); see also Digitalis Educ. Sols., Inc. v. United States, 664 F.3d 1380, 1384 (Fed. Cir. 2012) ("An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. Thus, a party must show that it is 1) an actual or prospective bidder and 2) that it has a direct economic interest."); AECOM Mgmt. Servs., Inc. v. United States, 147 Fed. Cl. at 290; PAE-Parsons Global Logistics Servs,. LLC v. United States, 145 Fed. Cl. 194, 198 (2019); Timberline

Helicopters, Inc. v. United States, 140 Fed. Cl. 117, 120 (2018); Contract Servs., Inc. v. United States, 104 Fed. Cl. 261, 269 (2012).

As indicated above, L3Harris CSW was awarded the contracts pursuant to the CB-1 RFP and the Addendum RFP in December 2020. A Judge of the United States Court of Federal Claims in Trailboss Enterprises, Inc. v. United States, 111 Fed. Cl. 338 (2013) found:

> To meet the "interested party" standard for standing under Section 1491(b)(1), the plaintiff must be an "actual or prospective bidder" and demonstrate that it possesses a direct economic interest in the contract award. See Sys. Application & Tech., Inc. v. United States, 691 F.3d 1374, 1382 (Fed. Cir. 2012) (citation omitted). Where the plaintiff is the awardee of the contract, however, it no longer has standing under Section 1491(b)(1) as an interested party for the purpose of challenging the terms of the award. Diversified Maint. Sys., Inc. v. United States, 103 Fed. Cl. 431, 436–37 (2012) (citing Outdoor Venture Corp. v. United States, 100 Fed. Cl. 146, 152 (2011)); see also Ingersoll–Rand Co. v. United States, 780 F.2d 74, 79 (D.C. Cir. 1985).

Trailboss Enters., Inc. v. United States, 111 Fed. Cl. at 340–41; see also Looks Great Servs., Inc. v. United States, 145 Fed. Cl. 324, 328 (2019); Kellogg Brown & Root Servs., Inc. v. United States, 117 Fed. Cl. 764, 769 (2014). The Judge in TransAtlantic Lines LLC v. United States, 126 Fed. Cl. 756 (2016) similarly indicated

> to satisfy the "interested party" standard, a plaintiff must establish that: "(1) it was an actual or prospective bidder; and (2) possess[es] the requisite direct economic interest." Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1382 (Fed. Cir. 2012) (alteration in original). As such, where the plaintiff is the awardee of the contract, it no longer has standing under 28 U.S.C. § 1491(b)(1).

TransAtlantic Lines LLC v. United States, 126 Fed. Cl. at 759; see also Harmonia Holdings Grp., LLC v. United States, 157 Fed. Cl. 292, 303 (2021) ("Plaintiff is the awardee of a JETS IDIQ contract and therefore is no longer 'an actual or prospective bidder or offeror' with respect to that procurement. Outdoor Venture, 100 Fed. Cl. at 152. It thus follows that, as an awardee, it is 'no longer an "interested party" with standing to bring a bid protest claim under 28 U.S.C. § 1491(b)' absent limited circumstances not present here."). Recently, a Judge of this court noted "[w]here a plaintiff asserts a bid protest claim arising from its own contract with the Government, the Court must examine the allegations closely because matters of contract administration and management fall under the Court's CDA jurisdiction." Harmonia Holdings Grp., LLC v. United States, 157 Fed. Cl. at 299.

A Judge of the Court of Federal Claims in Kellogg Brown & Root Services, Inc. v. United States, 117 Fed. Cl. 764 (2014) noted

[t]he Court does not believe that the terms "bids or proposals" [in 28 U.S.C. § 1491] are in the plural by accident. Rather, they are used because the purpose of this provision is to allow protests to the terms of competitive solicitations, in which a contract may be lost to another bidder due to an improper advantage. The provision is not designed to allow a party to object to a request for a proposal directed to that party alone and no others.

Id. at 770 (footnotes omitted). Notably, the Judge in Kellogg Brown & Root indicated in a footnote that: "Of course, when a proposed corrective action effectively restores an awardee to the status of bidder by requiring it to compete again for a contract award, this action may be challenged by the former awardee in a bid protest." Id. at 769 n.5; see also Sys. Application & Techs., Inc. v. United States, 691 F.3d at 1381–82. Protestor's bid protest complaint in the above captioned protest, as filed on September 7, 2021, relies on this exception to the general rule that a contract awardee does not have jurisdiction to bring a bid protest. The protestor in the protest currently before the court alleges

L3Harris CSW has standing to file this action because the Agency's decision to implement GAO's irrational and unlawful recommendation affects L3Harris CSW's direct economic interests in several significant ways, including by: (1) effectively nullifying the Navy's prior proper contract award to L3Harris CSW and requiring L3Harris CSW to compete a second time and win the same contract twice, see CBY Design Builders v. United States, 105 Fed. Cl. 303, 337-38 (2012); Sheridan Corp. v. United States, 95 Fed. Cl. 141, 149-50 (2010); (2) unnecessarily forcing L3Harris CSW to expend the time, effort, and expense of recompeting for a contract it has already lawfully won, see Sys. Application & Techs., Inc. v. United States, 100 Fed. Cl. 687, 710 (2011), aff'd 691 F.3d 1374 (Fed. Cir. 2012); Jacobs Tech. v. United States, 100 Fed. Cl. 173, 177 (2011) . . . .

Defendant argues

[t]he Navy has not displaced L3Harris CSW's award in implementing corrective action. Indeed, both the competition and the corrective action are complete. L3Harris CSW won, and its attempt to quibble with the additional rigor employed by the agency on a conflict of interest issue after receiving GAO's recommendation does not establish that an [sic] successful awardee such as L3Harris CSW possesses standing to maintain a protest related to its successful proposal.

Therefore, defendant argues, "L3Harris CSW cannot demonstrate that any error in the procurement process that [sic] was prejudicial to its award." Intervenor's motion to dismiss is even more direct: "The Navy's corrective action is now complete, and it has upheld the awards to L3Harris," and "L3Harris is therefore not an interested party, and it lacks standing to bring a protest in this Court."

In response, L3Harris CSW claims that "the protestor was an interested party when it filed its complaint, so that post-filing developments cannot deprive L3Harris CSW of standing." Although the October 18, 2021 letter from the Navy to the GAO was issued after the filing of the case, the Navy had never agreed to implement the GAO recommendations when the complaint was filed in September 2021. The Navy's subsequent determination on October 18, 2021 was not to implement all of the GAO recommendations, followed by the decision to proceed with the L3Harris CSW awards. As explained by the United States Supreme Court in <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992):

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized,[6] and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]' " Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

---

[6] As explained in <u>Lujan v. Defenders of Wildlife</u>: "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560 n.1.

Lujan v. Defenders of Wildlife, 504 U.S. at 560–61 (citations omitted);[7] see also Todd Constr., L.P. v. United States, 656 F.3d at 1315.[8]

Although protestor argues that L3Harris CSW's complaint "asserts the necessary injury for standing," protestor's bid protest complaint, as filed, does not demonstrate an injury caused by the Navy. L3Harris CSW's complaint requested that the court declare "GAO's flawed rulings and recommendations and the Agency's implementation of GAO's flawed rulings and recommendations irrational and contrary to law;" declare "the Navy's reasoned, lawful contract awards to L3Harris CSW under the CB-1 RFP and Addendum RFP valid and not subject to re-competition based on Northrop's untimely and meritless GAO protests or GAO's flawed rulings and recommendations;" and declare "that the Navy may proceed with the performance of the lawful contract awards to L3Harris CSW under the CB-1 RFP and Addendum RFP." The Navy's actions regarding the CB-1 RFP and

_____

[7] The court notes that defendant also cites to Lujan v. Defenders of Wildlife in its argument regarding mootness. As a Judge of the United States Court of Federal Claims recently observed in a bid protest:

The United States Supreme Court has stated that "[t]he doctrine of standing generally assesses whether [the requisite interest in a dispute] exists at the outset [of the litigation], while the doctrine of mootness considers whether it exists throughout the proceedings." Uzuegbunam v. Preczewski, —— U.S. ——, 141 S. Ct. 792, 796, 209 L.Ed.2d 94 (2021). Because the court is evaluating whether Disabled Veterans has demonstrated interested party status under § 1491(b)(1), the court analyzes jurisdiction for purposes of this opinion under the standing doctrine. However, the court's holding could also be framed under the mootness doctrine. Because Land Shark, operating as Disabled Veterans, no longer possesses the requisite interested party status to bring this case, the court cannot provide Land Shark with effectual relief, and the case is moot. See Uzuegbunam, 141 S. Ct. at 796; see also Acetris, 949 F.3d at 726-27 (determining that a portion of the case was "moot" because the plaintiff did "not now have standing" to challenge the solicitation at issue). Under either doctrine, this case must be dismissed for lack of jurisdiction.

Land Shark Shredding, LLC v. United States, 156 Fed. Cl. 84, 92 n.3 (2021).

[8] Although many of the standing cases discuss the issue in the context of the Article III courts, see Abraxis Bioscience, Inc. v. United States, 625 F.3d 1359, 1363 (Fed. Cir. 2010), "[s]tanding is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue," reh'g and reh'g en banc denied (Fed. Cir.), cert. denied sub nom. APP Pharm. v. Navinta LLC, 565 U.S. 825 (2011), the standing requirement applies equally to cases brought in the United States Court of Federal Claims. See Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (quoting Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("'The Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III.'").

Addendum RFP did not harm L3Harris CSW. Indeed, L3Harris CSW praises the "the Navy's reasoned, lawful contract awards to L3Harris CSW under the CB-1 RFP and Addendum RFP." As defendant argues, L3Harris CSW cannot demonstrate injury "let alone any connection between the Navy's action and any alleged injury, or that this Court may craft a form of relief that properly re-dresses its situation." Indeed, L3Harris CSW seeks a remedy against the actions of the GAO and requested the court to declare "that the Navy may proceed with the performance of the lawful contract awards to L3Harris CSW under the CB-1 RFP and Addendum RFP." In fact, the Navy now has determined the Navy will proceed with the awards to L3Harris CSW and has not terminated the awards to L3Harris CSW. In sum, as the contract awardee, L3Harris CSW is not an interested party under 28 U.S.C. § 1491(b)(1), and does not have standing to bring its protest in this court.

Even if L3Harris CSW was an interested party, both defendant and intervenor argue L3Harris CSW's protest is moot. Defendant argues that L3Harris CSW's "challenge has been rendered moot," and states, "[t]o the extent that L3Harris CSW seeks to challenge a recommendation from GAO that the Navy has determined it will not implement, L3Harris CSW [sic] challenge is moot, and this Court does not possess jurisdiction to consider its challenge any further." Intervenor argues that "[e]ven if L3Harris had standing (it does not), its complaint is moot." Protestor responds "L3Harris CSW's protest is not moot."

As noted above, protestor's complaint alleges that

L3Harris CSW has standing to file this action because the Agency's decision to implement GAO's irrational and unlawful recommendation affects L3Harris CSW's direct economic interests in several significant ways, including by: (1) effectively nullifying the Navy's prior proper contract award to L3Harris CSW and requiring L3Harris CSW to compete a second time and win the same contract twice, see CBY Design Builders v. United States, 105 Fed. Cl. 303, 337-38 (2012); Sheridan Corp. v. United States, 95 Fed. Cl. 141, 149-50 (2010); (2) unnecessarily forcing L3Harris CSW to expend the time, effort, and expense of recompeting for a contract it has already lawfully won, see Sys. Application & Techs., Inc. v. United States, 100 Fed. Cl. 687, 710 (2011), aff'd 691 F.3d 1374 (Fed. Cir. 2012); Jacobs Tech. v. United States, 100 Fed. Cl. 173, 177 (2011); (3) delaying L3Harris CSW's performance and income under the awarded contract, Sys. Application, 100 Fed. Cl. at 710; and (4) requiring L3Harris CSW to compete against itself as the Agency released L3Harris CSW competition-sensitive information to the unsuccessful offerors during debriefings. Id.; Sheridan Corp., 95 Fed. Cl. at 150.

As explained by Vice Admiral Chebi in his October 18, 2021 letter to the GAO:

The Agency will not implement GAO's second recommendation [which recommended that the Navy re-open discussions, request revised

proposals, evaluate proposals consistent with the evaluation criteria, and make a new source selection decision]. During the course of the protests, the Agency explained the solicitation requirements and evaluation criteria, particularly that the solicitation provided the technical experts with discretion whether or not to assess a deficiency in the context of this development effort. The Agency believes the second recommendation does not adequately account for the developmental nature of the Agency's requirement as it relates to the evaluation criteria and the Agency's evaluation, and that GAO misinterpreted the solicitation requirements in this regard. It is therefore unnecessary for the Agency to reopen discussions and reevaluate revised proposals in order to make a proper source selection decision. Thus, the Agency respectfully disagrees with, and will not implement, the GAO's second recommendation.

Therefore, after the October 18, 2021 response by Vice Admiral Chebi to the GAO, the Navy is not, as alleged by protestor, "effectively nullifying the Navy's prior proper contract award to L3Harris CSW and requiring L3Harris CSW to compete a second time and win the same contract twice" nor, as also alleged by protestor, is the Navy "unnecessarily forcing L3Harris CSW to expend the time, effort, and expense of recompeting for a contract it has already lawfully won." The underpinnings of L3Harris CSW's bid protest complaint is the concern that the Navy would follow all the recommendations of the GAO. As made clear by the Navy, at this point in time, the Navy will not implement all of the recommendations of the GAO, nor will the Navy cancel its awards to L3Harris CSW. L3Harris CSW's contracts remain in place and L3Harris CSW does not have to recompete for its contracts. Intervenor correctly observes that L3Harris CSW's claim is moot, "both because it is now the awardee and because the Navy abandoned the very course of action that L3Harris complained about."

Alternatively, protestor argues that "L3Harris CSW's challenge to the Navy's decision to perform the GAO recommended IRT [Independent Review Team] review cannot be moot because the Navy implemented the GAO recommendation and Northrop has challenged the IRT action as insufficiently implemented." Defendant responds that "[c]onvening an IRT has not harmed L3Harris CSW; if anything, the Navy's deliberations have strengthened, rather than weakened, the Navy's award decision" to L3Harris CSW. Further, as Northrop correctly notes "the Navy has been very clear: It has decided to proceed with the award to L3Harris." As explained by the Navy in the October 18, 2021 letter to the GAO, "the Agency respectfully disagrees with, and will not implement, the GAO's second recommendation." Currently, the Navy's position is straightforward and clear - it will proceed with L3Harris CSW's contract awards. The remedy that L3Harris CSW's bid protest complaint in Case No. 21-1819C sought has been satisfied by the Navy's responses to the GAO and the Navy's continued commitment to proceed with the award to L3Harris CSW.

L3Harris CSW further argues "[t]he Agency's decision to follow GAO's IRT recommendation may become moot at some later point should the Court deny Northrop's challenge but presently Northrop has challenged the rationality of the very thing Northrop

claims moots the L3Harris CSW Complaint," in the case of Northrop Grumman Systems Corp. – Mission Systems v. United States, Case No. 21-2099C, that Northrop filed, also in this court. In protestor's responses to the motions to dismiss filed in the protest currently under review, protestor argues that "Northrop's challenge to the Navy's IRT seeks to enforce the GAO decision and recommendation, exclude L3Harris CSW, and to terminate L3Harris CSW's contracts." L3Harris CSW's contentions, however, do not address if mootness in the current protest, Case No. 21-1819C, is established by the actions taken by the Navy regarding the contracts awarded to L3Harris CSW. As has been established above, the Navy's desire is to continue with L3Harris CSW's awards. In the future, it may come to pass that the Navy does not proceed with L3Harris CSW's contracts if the court grants Northrop injunctive relief in Case No. 21-2099C. Such actions taken by the court, however, and the subsequently possibility of the termination of L3Harris CSW's contracts would not be due to Navy's desire not to proceed with the L3Harris CSW's contracts.

Protestor also argues that "L3Harris CSW continues to face harm from the flawed GAO decisions," arguing that "[b]ased on the GAO's irrational decision, the Navy announced its intention to follow GAO's flawed IRT recommendation months ago on August 24, 2021. Since that time, the Navy has stayed L3Harris CSW's performance of the CB-1 contracts, resulting in numerous harms including loss of profit, increased overhead costs, and an idle workforce." The fact that L3Harris CSW's contract is currently not being implemented by the government also is not a sufficient reason for the court not to dismiss protestor's complaint. As indicated in Outdoor Venture Corp. v. United States, 100 Fed. Cl. 146 (2011):

> In this case, OVC's [Outdoor Venture Corporation's] award has been stayed, see Oral Argument, Argument of Mr. Marc Lamer at 2:14:34–48 (stating that DLA has not lifted the automatic stay that began when Diamond filed its protest at GAO), but OVC does not allege that the government has resolicited the contract or that it intends to do so, see Compl. passim; see also Pl.'s Resp. 3 n. 1 ("Plaintiff would point out that it will not be able to compete for the award as there will be no re-solicitation in this case."). Because there has been no resolicitation—as there was in the cases cited by plaintiff—OVC's protest is not in the nature of a pre-award claim. Therefore, OVC has failed to establish that it is an interested party with standing to bring this bid protest. See AFGE, 258 F.3d at 1299 (stating that standing to bring bid protests is limited to interested parties) (citation omitted); see also Lujan, 504 U.S. at 561, 112 S. Ct. 2130 (stating that the party invoking the court's jurisdiction bears the burden of establishing that it has standing) (citations omitted).

Outdoor Venture Corp. v. United States, 100 Fed. Cl. at 153. Moreover, the reason for pausing implementation of the awards to L3Harris CSW, as noted by protestor, is the result of Northrop's subsequent, bid protest in this court. In CBY Design Builders v. United States, a Judge of the Court of Federal Claims noted that speculation about a different protest "is not itself an injury to the direct economic interests of the plaintiff." See CBY Design Builders v. United States, 105 Fed. Cl. 303, 330 (2012). The fact of a continued

stay by the Navy of L3Harris CSW's contract performance as a result of Northrop's protest in another case does not provide a continued basis for jurisdiction in the above captioned protest in this court.

The CBY Design Builders case is instructive to the issues before the court. In CBY Design Builders, a Judge of the Court of Federal Claims explained that

> [t]he Corps initially awarded the contract to Plaintiff CBY Design Builders, which is a joint venture of Brasfield & Gorrie, L.L.C., CDM Constructors Inc., and W.G. Yates and Sons Construction Co. On November 4, 2011, CBY filed a bid protest in our court challenging a decision of the Corps to follow recommendations of the Government Accountability Office and to implement corrective action in accordance with a GAO decision sustaining the protests of unsuccessful offerors. This corrective action entailed a conflict-of-interest investigation, a stay of the award, amendment of the solicitation, and a resolicitation of proposals for a new evaluation and award. Bechtel Infrastructure Group and PCCP Constructors, JV, the protesters before GAO, have intervened in this case to defend the Corps's decision to take corrective action. Plaintiff CBY has moved for judgment on the administrative record, arguing that the GAO decision was arbitrary and capricious, and that therefore the Corps also acted arbitrarily and capriciously by following the GAO's recommendation. CBY seeks permanent injunctive relief to prevent the Corps from proceeding with the corrective action, as well as an order directing the Corps to proceed with performance under the contract originally awarded to CBY.

Id. at 308–09 (internal references omitted). The Judge explained that the Corps conducted a total of three OCI investigations, id. at 322, and

> [a]fter conducting the third OCI investigation as GAO had recommended, the contracting officer announced that "there are no hard facts to establish that Mr. Kendrick or CBY had actual access to proprietary or source selection information," and that no conflict of interest existed for CBY under the FAR. The contracting officer explicitly confirmed his previous PIA [Procurement Integrity Act] Determination and Findings of May 23, 2011 "that found no violation and no impact on the procurement." Despite the absence of an OCI, however, Mr. Black acknowledged GAO's finding that the RFP was misleading in how it conveyed the build-to-budget evaluation criterion, and stated that the RFP would be amended to address this concern. On October 21, 2011, the contracting officer sent letters to each of the five Phase II offerors announcing that the Corps would take corrective action to implement the GAO recommendation. In those letters, the contracting officer explained that the Corps had performed a third investigation as recommended by the GAO and had confirmed its original determination that no OCI existed within the CBY team. He also announced that in accordance with the GAO recommendation, "and in order to address the current needs of the agency," the Corps intended to amend the RFP so

that new proposals could be accepted and evaluated. On October 28, 2011, the Corps sent out additional corrective action letters with a draft of the proposed changes to the RFP.

Id. at 322–23 (internal references omitted). Thereafter, protestor CBY filed a bid protest in the United States Court of Federal Claims.

In the first count of the complaint, CBY alleged that the Corps's decision to follow the GAO recommendation and conduct a third OCI investigation was arbitrary and capricious. Underpinning this claim are CBY's allegations in Count I.B that the GAO irrationally determined that the prior OCI investigations were too narrow in scope, and that the recommendation to further investigate a potential OCI was therefore arbitrary and capricious. According to plaintiff, the GAO decision in this regard was irrational because GAO failed to give due deference to the contracting officer's findings in the two previous investigations; because the build-to-budget information was public knowledge; because GAO applied the wrong standards; and because there were no hard facts to support the conclusion that Mr. Kendrick had access to non-public, competitively useful information.

Id. at 328 (internal references omitted). In response to protestor's bid protest, the government filed a motion to dismiss and argued "that a challenge to the recommended third OCI investigation is moot, as the investigation has already been completed and did not result in harm to CBY." Id. at 324. After considering the parties' arguments, the Judge concluded:

The Court is not persuaded by CBY's arguments that the Corps's decision to follow the GAO recommendation and conduct a third OCI investigation may be challenged in this bid protest. The complaint on its face alleges that the third OCI investigation has been completed and resulted in the contracting officer's determination that no actual or potential OCI existed. Assuming that CBY is correct in alleging that the GAO was arbitrary and capricious in recommending that the Corps should conduct a third investigation, the Corps completed that investigation and concluded that no OCI existed to preclude CBY from competing for or being awarded the Permanent Canal Project contract. Had the investigation resulted in the opposite conclusion, and plaintiff's award were accordingly cancelled, that investigation—and possibly the rationality of the GAO recommendation that spawned it—could certainly be the subject of a bid protest. But the result of the Corps's allegedly arbitrary decision to conduct a third investigation is the further exoneration of CBY and Mr. Kendrick.

In his Determination and Findings for the third investigation, the contracting officer stressed that the proposed amendment to the solicitation relating to the build-to-budget evaluation criterion "will correct the perceived errors in the RFP as identified by the GAO and *is not in response to any claims or*

*assertions about the alleged existence of an OCI.*" (emphasis added). The corrective action letters sent out to offerors stated that the Corps "has reconfirmed its original determination that no Organization Conflict of Interest exists within the CBY team," and does not link the third OCI investigation to the decision to amend the solicitation and to accept for evaluation new proposal revisions. The government concedes that the result of the third OCI investigation cannot be the basis for the decision to stay the contract award to CBY and conduct a recompetition. Thus, even if the Corps had irrationally followed an arbitrary recommendation from the GAO, this has resulted in a final decision that has not injured CBY. The recommendation has already been followed, it is not reasonable to believe that it can "recur," and the result of the third investigation has "completely and irrevocably eradicated the effects of" any error in following the recommendation. Davis*,* 440 U.S. at 631, 99 S. Ct. 1379. Any challenge by CBY to the decision to conduct a third investigation is now moot.

The Court does not find that the pendency of the intervenors' agency-level protests, brought under 48 C.F.R. § 33.103, affects the mootness analysis. Plaintiff maintains that the conclusion of the third investigation has given the intervenors another reason to challenge the finding that no OCI existed, prolonging litigation and delaying the performance of the contract it was awarded. Although it is true that, had there been no third investigation, there could be no agency-level protest of the result of that investigation, this does not mean that intervenors' continued protests are dependent on the existence of that investigation. Had the Corps decided not to follow the GAO recommendation and not to conduct a third investigation, the intervenors could have protested *that decision* at the agency level, or in our court as part of a protest of any award to CBY. Thus, any looming risk to CBY's award is not the product of the third investigation, but rather of the intervenors' determination to protest. These protests may be inconvenient for CBY, but unless the government violates some statute or regulation in accepting the protests for filing, it is hard to see how our bid protest jurisdiction is remotely implicated. The ADRA [Administrative Dispute Resolution Act of 1996] is not a mechanism for the removal to our court of protests filed elsewhere, cf. 28 U.S.C. § 1446 (providing for removal of civil actions to district courts), and speculation about the potential results of agency-level protests is not itself an injury to the direct economic interests of the plaintiff. To be sure, if those protests are decided against CBY, and it is excluded from competition for the Permanent Canal Project contract, then there would exist a decision by the Corps that could be challenged in our court. But that would be a different decision, and a different protest.

For the same reasons described above, the Court concludes that CBY lacks standing to challenge the Corps's decision to conduct a third OCI investigation. The decision to follow the GAO recommendation resulted in the further exoneration of CBY and Mr. Kendrick, and thus is not an

impediment to CBY receiving its contract award. And there is no connection between the decision to conduct a third investigation and the portions of the corrective action calling for new revised proposals to be evaluated for a new award. The decision to follow the GAO recommendation concerning the OCI investigation, arbitrary or not, has imposed no competitive injury upon CBY.

CBY Design Builders v. United States, 105 Fed. Cl. at 329–30 (emphasis in original) (footnote omitted; internal references omitted).

In the above captioned protest, intervenor argues "[t]he risk to L3Harris's award stems from Northrop Grumman's protest and a future ruling by this Court — not the agency's now-completed IRT investigation, which the Navy used to affirm L3Harris's award. The potential outcome in Northrop Grumman's protest is insufficient to establish that L3Harris is an interested party with the kind of direct economic interest necessary to maintain a protest." (footnote omitted). As demonstrated throughout this Opinion, L3Harris CSW still is the awardee on both contracts awarded by the Navy. There is no competitive injury that L3Harris CSW is currently suffering as the Navy has determined to continue with its awards to L3Harris CSW, and its decision to complete an IRT investigation did not, and does not harm L3Harris CSW. To repeat, any potential, future outcome in Northrop's protest cannot provide a ground for L3Harris CSW's bid protest in Case No. 21-1819C to continue in this court.

Moreover, L3Harris CSW has suggested to this court that "[t]he Court should either stay this protest pending resolution of Northrop's protest or consider this matter in conjunction with Northrop's protest." As determined above, however, this court does not have jurisdiction to address L3Harris CSW's claims in the current protest. The court, therefore, will not stay the protest. The only action the court may take in the above captioned protest is to dismiss L3Harris CSW's bid protest complaint.

Finally, protestor argues "Northrop's protest demonstrates the ongoing importance of the issues raised in L3Harris CSW's protest." The facts in the above captioned protest appear unique, as neither the parties, nor the court, have discovered a case in which a protestor filed a bid protest to contest a GAO decision, and then when the agency did not fully implement the GAO decision, the previous intervenor filed a subsequent bid protest, and the former protestor then joined the subsequent protest as an intervenor, with contract awards to the original protestor undisturbed. The uniqueness of the facts, however, does not provide any basis for the continuation of L3Harris CSW's protest in the above captioned protest, Case No. 21-1819C. The lack of jurisdiction over L3Harris CSW's claims in the above captioned bid protest guides the decision in this court to dismiss L3Harris CSW's complaint, Case No. 21-1819C. Notably, intervenor's motion to dismiss states "a third party's interest in the outcome of a lawsuit is meant to be addressed by intervention," and "L3Harris has, in fact, intervened in Northrop Grumman's protest." Northrop argues that "[i]f L3Harris has concerns about Northrop Grumman's protest or its potential impact, it can pursue those concerns as an intervenor. There is simply no relief left for L3Harris to seek in its own complaint." The court agrees.

**CONCLUSION**

L3Harris CSW does not possess standing as an interested party in this protest. Moreover, L3Harris CSW's bid protest complaint in the above captioned protest, Case No. 21-1819C, is moot. Therefore, defendant's motion to dismiss and intervenor's motion to dismiss are **GRANTED** and protestor L3Harris CSW's complaint in Case No. 21-1819C is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion. Litigation on the merits of the Navy's actions regarding award of the underlying contracts continues in Northrop's subsequently filed protest referenced above.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**